UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GEM INDUSTRIAL, INC.,**<br><br>Plaintiff,<br><br>**v.**<br><br><br>**PA SOLUTIONS,**<br><br>Defendant. | **2:22-CV-13037-TGB-CI**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING IN PART AND GRANTING IN PART PA SOLUTIONS MOTION FOR SUMMARY JUDGMENT (ECF NO. 21)** |

GEM Industrial, Inc. ("GEM") worked as a subcontractor performing electrical installations for PA Solutions, Inc. ("PA") as part of a major project to perform factory improvements at two FCA automobile manufacturing plants in metro Detroit. GEM now alleges that it should be allowed to recover $ 2.8 million dollars in compensation for unreasonable delays, unforeseen work, and other incurred costs. PA denied that request. Plaintiff GEM filed suit and now Defendant PA moves for summary judgment, arguing that GEM is not entitled to recover under the parties' contract. Because the Court concludes that some of the terms of the contract are ambiguous and some of the facts remain in contention, PA's Motion for Summary Judgment will be **DENIED IN PART** and **GRANTED IN PART**.

# I. FACTS

## A.    The Contracts

PA is a general contractor and GEM is a subcontractor. PA and GEM agreed to a Master Technical Services Agreement ("MTSA") in 2017. ECF No. 1-3, PageID.23. The MTSA provides that:

> Each invoice submitted to PA by [GEM] shall detail the applicable Statement of Work … [and i]n no event without the prior written authorization of PA shall [GEM] invoice PA for more than the maximum aggregate fees or hours permitted to be invoiced by [GEM] as specified in the applicable Statement of Work.

ECF No. 1-3, PageID.24.

The MTSA also provides that PA will not "dictate the time of performance, except that a completion schedule and a range of mutually agreeable work hours may be established through a written agreement," and that PA will not "dictate a place of performance … unless such place is dictated by necessity or by a customer." *Id.* at PageID.25. The MTSA precludes PA or GEM from recovering "punitive, exemplary, indirect, special, or consequential damages" from each other arising under the work covered by the MTSA. *Id.* at PageID.28. The MTSA provides that GEM "and not PA" will "be solely responsible for ensuring compliance with all applicable labor and employment laws, ordinances, codes, and regulations of government agencies." *Id.* at PageID.25. It also provides

2

that PA will not pay or reimburse GEM for its or its workers' business and travel expenses. *Id.* at PageID.24.

In 2019 and 2020, GEM and PA signed two contracts providing for GEM to perform electrical work in connection with the building out of new production lines at two FCA manufacturing plants, the Mack Assembly plant, and the Warren Assembly plant. ECF No. 24-3, PageID.602; ECF No. 24-4, PageID.605. These contracts are named, respectively, Statement of Work No. 22 and Statement of Work No. 23. ECF No. 24-3, PageID.602; ECF No. 24-4, PageID.605.[1] Both parties agree that the Statements of Work are governed by the parties' earlier contract, the MTSA. ECF No. 21, PageID.151; ECF No. 25, PageID.607.

The Statements of Work both provide that the labor contracted for is "as outlined" in GEM documents: namely, certain "Scope of Work" documents and proposals previously prepared by GEM. ECF No. 24-3, PageID.602; ECF No. 24-4, PageID.605. The "Scope of Work" documents and proposals that GEM prepared provided: "Schedule as required by PA Solutions and FCA." *See* ECF No. 21, PageID.152.

---

[1] In its Response, GEM argues that "Neither Statement of Work 22 … or Statement of Work 23 … were signed by both parties, and thus were never incorporated into the MTSA." ECF No. 23, PageID.420. However, it appears that since then, "GEM's counsel has agreed to withdraw the argument that the Statements of Work were not signed or incorporated into the governing Contracts." ECF No 24, PageID.589; *see* ECF No. 25, PageID.607. Accordingly, the Court will not address this argument.

GEM and PA would later agree to another Statement of Work, Statement of Work No. 25, to which the previous statements about the MTSA and previous GEM proposals also apply. ECF No. 1-4, PageID.44.

Each of the Statements of Work purports to limit how much GEM may invoice PA for the work performed. ECF No. 24-3, PageID.602; ECF No. 24-4, PageID.605. For example, Statement of Work No. 23 provides that "[i]n no event shall [GEM] invoice PA in excess of the maximum aggregate billable amount of $1,814,022.36." ECF No. 24-4, PageID.605.

Once work on the projects began, problems arose. GEM asserts that PA prevented GEM from beginning work, because PA had not completed predecessor activities that GEM needed to be completed before it could start. ECF No. 1, PageID.4. For instance, GEM alleges that "mechanical installation, which must be completed before electrical installation, was delayed and thus delayed GEM." ECF No. 23, PageID.418. PA ordered GEM to stop work for months during the height of the COVID-19 pandemic. ECF No. 1, PageID.4. PA required GEM to work on a compressed schedule, and to install additional items and perform work that was outside GEM's original assignment. *Id.* at PageID.5, PageID.8. GEM did not receive prior written authorization from PA to bill PA more than the maximum prices in the Statements of Work. ECF No. 21, PageID.156; ECF No. 23, PageID.414.

Following the completion of the projects, GEM sent PA two claim letters seeking nearly $3 million in additional payments. ECF No. 21,

PageID.156. GEM has disclosed lists of items it asserts it had to install for which it seeks to recover additional payment, *see* ECF No. 21-20, as well as the letters to PA in which GEM explains the predecessor activities which PA allegedly failed to perform. ECF No. 21-16, PageID.356–59; ECF No. 21-17, PageID.360–63. PA has not yet paid GEM the amounts claimed, and GEM filed this lawsuit in December 2022, seeking $1.2 million in damages for the Mack Project and $1.6 million for the Warren Project. ECF No. 21, PageID.157–58.

As the parties engaged in discovery, GEM provided its required initial disclosures stating damage amounts. *Id.* However, GEM never provided a methodology for calculating its claimed damages resulting from delays. *Id.* at PageID.170. Nor did it provide an expert to support such damages. *Id.*

On September 24, 2024, PA filed a Motion for Summary Judgment, seeking dismissal of GEM's lawsuit. ECF No. 21. GEM filed a Response on October 29, 2024, ECF No. 23, and PA filed a Reply on November 12, 2024. ECF No. 24.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013);

5

see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under governing law. See *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252. For the Court to grant summary

judgment, the evidence cannot be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## III. ANALYSIS

GEM's Complaint claims that PA breached the parties' contracts in nine ways:

(A)     Failing to provide GEM access to the project sites with reasonable time for completion of its scope of work;

(B)     Mismanaging predecessor work of its subcontractors thereby delaying GEM's access to the project sites;

(C)     Directing GEM to mobilize to the project sites before GEM's scope of work could be started;

(D)     Requiring GEM to repair deficient predecessor work outside the scope of the contracts;

(E)     Directing GEM to work out-of-sequence and in an inefficient manner;

(F)     Requiring GEM to provide additional manpower to the projects;

(G)     Requiring GEM to work on a compressed schedule;

(H)     Directing GEM to provide additional work and materials to the projects; and

(I)     Failing to pay GEM what it is due for its work on the projects.

ECF No. 1, PageID.10–12.

These same breaches resulting in damages are claimed for both projects. GEM also argues in the alternative that PA was unjustly enriched by the additional work GEM performed because PA did not compensate GEM for all the work. *Id.* at PageID.11–12. In its Motion for Summary Judgment, PA makes four arguments as to why GEM cannot recover on any of its theories of damages. PA is entitled to judgment as a

matter of law as to some of its arguments. However, because PA relies on facts that remain genuinely disputed, and because a reasonable jury could come to a number of different conclusions regarding how the parties' contracts should be interpreted, PA is not entitled to judgment as a matter of law on all its arguments.

### 1. "PA Never Authorized GEM's Increased Payments"

To challenge GEM's breach of contract claims, PA points to specific language in the MTSA and the Statements of Work. *See* ECF No. 21, PageID.161–62. The MTSA provides that "in no event without the prior written authorization of PA shall [GEM] invoice PA for more than the maximum aggregate fees or hours permitted to be invoiced by [GEM] as specified in the applicable Statement of Work." ECF No. 1-3, PageID.24. And the applicable Statements of Work provide that "[i]n no event shall [GEM] invoice PA in excess of the maximum aggregate billable amount," which varied from Statement to Statement. ECF No. 21, PageID.161. Because GEM claims damages that exceed the maximum aggregate billable amounts in the Statements of Work, and because GEM did not receive prior written authorization from PA to invoice PA for more than the Statements of Work allowed, PA argues that GEM's breach of contract claims must fail. *Id.* at PageID.161–62.

These "in no event" clauses are also known as "Guaranteed Maximum Price" clauses ("GMP"). "A guaranteed maximum price provides a cap on a party's financial obligations. It is the greatest amount a party is required to pay for the contracted services." § 6:112. Price arrangements: Guaranteed maximum price contracts, 2 Bruner & O'Connor Construction Law § 6:112 (citing *TRW, Inc. v. Fox Development Corp.*, 604 N.E.2d 626, 629–30 (Ind. Ct. App. 1992)).

Upon review of the law and facts the parties have submitted, PA's GMP clause in the relevant contracts results in PA being entitled to summary judgment on some, not all, of GEM's breach of contract damage claims.

### A. The Guaranteed Maximum Price Clause Does Not Entitle PA to Summary Judgment on Most of the GEM's Alleged Breaches of Contract.

GEM alleges that PA breached the MTSA in several ways. As set out above, GEM claims that PA breached the MTSA by:

(A)    Failing to provide GEM access to the project sites with reasonable time for completion of its scope of work;

(B)    Mismanaging predecessor work of its subcontractors thereby delaying GEM's access to the project sites;

(C)    Directing GEM to mobilize to the project sites before GEM's scope of work could be started;

(D)    Requiring GEM to repair deficient predecessor work outside the scope of the contracts;

(E)    Directing GEM to work out-of-sequence and in an inefficient manner;

(F)    Requiring GEM to provide additional manpower to the projects;

(G)     Requiring GEM to work on a compressed schedule;

(H)     Directing GEM to provide additional work and materials to the projects; and

(I)     Failing to pay GEM what it is due for its work on the projects.

ECF No. 1, PageID.10–12.

GEM's position is that even though the contracts contain a GMP clause, PA's conduct breached the MTSA, causing GEM to suffer damages. ECF No. 23, PageID.421–23. Specifically, GEM points to the provision in the MTSA stating that PA may not "dictate the time of performance" of GEM's work in the contract unless there is an agreement otherwise between the parties. *See Id.* at PageID.421–22; ECF No. 1-3, PageID.25. GEM contends that because the MTSA prohibits PA from dictating GEM's time of performance, GEM can still recover damages for the categories of breaching conduct listed in the paragraph directly above: those damages allegedly arise from PA improperly dictating the time of GEM's performance. *See* ECF No. 23, PageID.421–23. The GMP clause does not prohibit GEM from claiming damages allegedly caused by PA's breach. Therefore, it is possible that GEM could recover even though there is the GMP.

PA responds that the purchase orders, as incorporated into the Statements of Work, provide that the schedule for the projects will be "as required by PA … and FCA." ECF No. 24, PageID.591. According to PA, this is an agreement between the parties which, per the MTSA, overrides the MTSA's clause prohibiting PA from dictating the time of

performance. *See* ECF No. 1-3, PageID.25. But whether this is correct turns on the question: what does "schedule as required" mean? Does it empower PA to dictate the times of day in which GEM works at FCA's plants? Does it mean that PA may direct GEM to report to the worksites, say, ten years after GEM originally contemplated performance? Does it mean that PA could require GEM to only work for five hours a day, or one hour a day, or one minute a day — and that if PA made such unreasonable requests, that GEM could not recover any damages?

Because it is subject to numerous possible meanings, the phrase "schedule as required" is an ambiguous term in GEM and PA's contracts. If terms in a contract "are subject to two or more reasonable interpretations, a factual development is necessary to determine the intent of the parties and summary judgment is inappropriate." *Great Lakes Exteriors, Inc. v. Dryvit Sys., Inc.*, No. 99-70449, 2000 WL 156811, at *2 (E.D. Mich. Jan. 27, 2000) (Zatkoff, J.) (*citing SSC Associates Ltd. Partnership v. General Retirement System of the City of Detroit*, 192 Mich. App. 360, 363 (1991); *Petovello v. Murray*, 139 Mich. App. 639, 642 (1984)). Because "schedule as required" is ambiguous, the Court cannot find that PA's promise in the MTSA to not dictate the time of GEM's performance was overridden by the Statements of Work. Therefore, PA cannot rely on the GMP clause to support summary judgment on GEM's claims in categories (A), (B), (C), (E), and (G), all of which relate to GEM's timing and schedule.

The Court also construes claim (D), that PA required GEM to repair deficient predecessor work, and claim (F), that PA required GEM to provide additional manpower to complete their tasks in a compressed schedule, as falling under the MTSA's provision prohibiting PA from dictating GEM's time of performance. If, as alleged, PA failed to complete work that was necessary for GEM's work to begin, that would amount to PA effectively dictating GEM's time of performance by making it impossible for them to begin their contracted-for work on schedule. GEM plausibly claims that PA's alleged breaches of the scheduling clause would also have caused GEM to hire additional manpower. *See* ECF No. 1, PageID.5 ("GEM increased manpower to complete this new, compressed schedule and scope."). PA is therefore not entitled to summary judgment on claims (D) and (F) either simply because of the GMP clause.

## B. PA is Entitled to Summary Judgment on Alleged Breach of Contract (H).

GEM's alleged breach of contract (H) is that PA breached their contracts by directing GEM to provide additional work and materials to the projects. GEM states that PA directed "GEM to provide work that was not covered by an additional purchase order, including the installation of temporary power at the jobsite, additional sensors, devices, and safety blocks, among other things." ECF No. 1, PageID.5.

These additional installations "were not included in GEM's bid package." *Id.* at PageID.8.

But as PA notes, "GEM did not follow contractual procedures to authorize its supposed extra work." ECF No. 21, PageID.162. The MTSA provides that "in no event without the prior written authorization of PA shall [GEM] invoice PA for more than the maximum aggregate fees or hours permitted to be invoiced by [GEM] as specified in the applicable Statement of Work." ECF No. 1-3, PageID.24. And the Statements of Work contained GMP clauses. *See* ECF No. 21, PageID.161. As such, GEM cannot recover for providing additional work and materials to the projects for PA. The contracts specifically provided that GEM could not invoice PA for more than the stated amounts without prior written authorization of PA, and GEM can point to no such authorization. In cases like this where the parties agree to a GMP clause, GEM assumed the risk that it would have to perform more work than it initially thought. *See ABC Paving Co. v. Washtenaw Cnty. Rd. Comm'n*, No. 276703, 2008 WL 4605929, at *2–3 (Mich. Ct. App. Oct. 2, 2008) (finding that where plaintiff contractor did not receive the contractually required authorization to perform extra work, it could not recover: "by choosing not to obtain prior approval for the additional work … ABC took the risk that it may not be reimbursed."). Like in *ABC Paving Co.*, GEM's remedy with regard to additional work was to refuse to perform it until it received written authorization from PA to bill more.

GEM responds by arguing that the contracts are ambiguous on "how, when, and whether GEM may seek a change order [prior written authorization], and therefore summary judgment is simply inappropriate." ECF No. 23, PageID.425. On this point, the Court disagrees that the contracts were ambiguous: GEM needed to obtain prior written authorization from PA to bill amounts in excess of the GMP clauses. *See* ECF No. 1-3, PageID.24; ECF No. 21, PageID.161. All that was needed was *some kind* of prior written authorization. Whatever the precise contours of "prior written authorization," GEM has failed to get it here. Therefore, the GMP precludes PA from recovering for the alleged breach of contract (H). By performing extra work without prior written authorization to bill PA more, GEM assumed the risk of receiving no compensation for that extra work.

However, while it may be said that this rationale extends to other breach of contract claims above — GEM could have refused to perform delayed or inefficient work, or work with increased manpower, without first receiving written authorization to bill for the increased charges — crucial differences result in different outcomes. In the other breach of contract claims, damages arose from a separate, alleged breach of PA's contractual promise not to dictate GEM's time of performance. The Court must avoid interpretating contracts in a manner "that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 468 (2003). To say that PA could breach

14

GEM's right not to have its time of performance dictated without GEM being able to recover any damages would negate GEM's contractual right protecting against such behavior dictation. But as for breach of contract claim (H), GEM has not pointed to a persuasive contractual provision that protected it from the GMP.

### 2. "No Unjust Enrichment When the Contract Covers the Subject Matter"

PA also seeks summary judgment on GEM's unjust enrichment claim, arguing that GEM cannot recover based on unjust enrichment where there is an express contract covering the same subject matter. ECF No. 21, PageID.163 (*citing ABC Paving Co.*, 2008 WL 4605929 at *9). PA argues that because the contracts cover the "subject matter" of the amount that GEM can be paid without prior authorization, that GEM cannot recover under an unjust enrichment theory. *Id.*

This argument is correct regarding claim (H), that PA caused GEM to perform additional work where GEM had not received prior written authorization to bill for more. The GMP covered the subject matter of what GEM was supposed to do if it wanted to bill more for additional work. PA is entitled to summary judgment on this theory of breach, and GEM cannot recover those damages under an unjust enrichment theory.

As to the other claims and the damages arising from those claims, this reasoning does not apply. They all arise from alleged breaches of PA's promise not to dictate GEM's time of performance. And while the

15

contracts cover the "subject matter" of how PA is to request additional payment, they do not cover the "subject matter" of whether GEM can recover damages for other breaches by PA. This claim is made in the alternative, however, so that if GEM recovers for breach of contract based on claims (A) through (G), there could be no recovery under a theory of unjust enrichment. But in the absence of such a jury finding, summary judgment is denied as to GEM's unjust enrichment cause of action for all breaches of actions apart from (H).

### 3. "Discovery Violations by GEM Preclude it Recovering Damages"

PA argues that GEM has failed to disclose sufficient computation of its damages, and that as such GEM cannot recover any damages at all. ECF No. 21, PageID.163–66.

The Federal Rules of Civil Procedure require parties to provide "a computation of each category of damages claimed … [and] the documents or other evidentiary material … on which each computation is based." Fed. R. Civ. P. 26(a)(1)(iii). The Rules also provide that if a party fails to comply with Rule 26, the undisclosed evidence must be excluded unless the Rule 26 violation was harmless. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (*citing* Fed. R. Civ. P. 37(c)(1)). GEM has not disclosed more specific computations of its damages than those contained in its original claim letters sent to PA — even in response to interrogatories from PA. ECF No. 21, PageID.164–

16

65. And GEM did provide more than lump sum figures, going as far as to detail line-item categorizations and individuals with knowledge of the project schedule, project delay, issues relating to installation, and "project accounting." ECF No. 21-18, PageID.365–66; ECF No. 21-20. GEM asserts that PA simply failed to depose the relevant individual or individuals on GEM's witness list. ECF No. 23, PageID.415.

On the record before it, the Court concludes that GEM should have done more to comply with its discovery obligations. For instance, it has not produced a computation of how their delay damages were calculated, and the documents on which such computation is based. However, the Court finds that in this case, GEM's failure to disclose its methodology is relatively harmless and may be remedied.

In *Howe v. City of Akron*, the court set forth a test for assessing "whether a party's omitted or late disclosure is 'substantially justified' or 'harmless.'" 801 F.3d 718, 747–48 (6th Cir. 2015). The factors are "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* at 748.

In this case, application of the factors indicates that GEM's failure to disclose its methodology was harmless. On the first factor, PA has knowledge of the nature and general extent of the evidence GEM will

17

offer; thus, any forthcoming evidence would not be a surprise. On the second factor, PA can cure any surprise by reviewing the methods and amount alleged against its own figures and PA has the time to do so before trial. On the third factor, the evidence will enable the trial to proceed more effectively, not cause a disruption. On the fourth factor, the Court finds that the evidence to be discovered is important because it will allow a factfinder to decide between the parties' competing claims regarding the extent of the work completed. And on the fifth factor, the Court finds that GEM's explanation for its non-disclosure, that it met its burden and PA simply failed to adequately perform discovery follow up work to assess GEM's initial disclosures, is sufficiently plausible.

Though the lack of discovery here is not so harmful as to prohibit GEM from claiming damages, it nevertheless justifies reopening discovery to cure the problem. Under Fed. R. Civ. P. 16 and Fed. R. Civ. P. 37, the Court orders discovery reopened on the calculation of costs GEM seeks damages on that relate to delays and manpower costs. Discovery is not reopened on any other aspects of this case. Because it failed to comply with Rule 26, however, the Court **ORDERS** GEM to bear all costs incurred by PA for (1) attorney's fees for reviewing the reopened discovery and (2) PA's other expenses such as reviewing discovery, taking depositions, and any other costs related to the reopening of discovery on this issue.

### 4. Attacks on GEM's Damages

PA makes three arguments for why GEM cannot recover certain types of damages. ECF No. 21, PageID.166. First, PA argues that GEM cannot recover delay damages because (1) their contracts preclude consequential damages, *id.* at PageID.167–69, (2) GEM never bargained for a specific schedule, *id.* at PageID.169, and (3) GEM has not provided a defensible methodology for its delay damages. *Id.* at PageID.169–71. Second, PA argues that GEM cannot recover costs based on travel and COVID-19-related expenses. *Id.* at PageID.171–72. Third, PA argues that GEM's documentation of the devices GEM installed is incorrect. *Id.* at PageID.172–73. For the reasons that follow, the Court finds that PA is entitled to summary judgment as to GEM's costs based on travel and COVID-19-related expenses, but not on the other damage theories.

### A. "GEM Cannot Recover Delay Damages"

### i. "The Contracts Preclude Recovery of Special Damages"

PA's first argument for why GEM should not be able to recover delay damages is as follows: the contracts preclude recovery for "indirect, special, or consequential damages." ECF No. 21, PageID.168. And delay damages qualify as unrecoverable indirect, special, or consequential damages. PA cites to *Performance Abatement Servs., Inc. v. Lansing Bd. of Water & Light*, 168 F. Supp. 2d 720, 728, 740–41 (W.D. Mich. 2001) ("*Performance Abatement*"), in which the court found that under the

19

circumstances alleged, "delay damages" were "special, incidental, or consequential damages" under Michigan law. ECF No. 21, PageID.168. However, the *Performance Abatement* case, which does not bind this Court, did not abolish Michigan's test for determining whether damages are "special" or "general." 168 F. Supp. 2d at 741. Rather, it applied that test. *Id.*

In Michigan law, "[g]eneral damages are available where the injury is the natural result of the injury complained of in the pleadings … if such injury can be traced to the act complained of *and is such as would naturally flow from the alleged injury*, it need not be specifically averred." *Fleet Bus. Credit v. Krapohl Ford Lincoln Mercury Co.*, 274 Mich. App. 584, 590 (2007) (emphasis added, internal formatting removed) (quoting *Van Pembrook v. Zero Mfg. Co.,* 146 Mich. App. 87, 107 (1985)). And although the classification of damages is an issue for the Court, not a jury, *see Performance Abatement*, 168 F. Supp. 2d at 740, summary judgment is inappropriate on whether GEM's claimed delay damages are "special" or "general." A reasonable factfinder could find that when a contractor causes delay to a subcontractor, delay damages are damages "such as would naturally flow from the alleged injury."

Additionally, courts in other states applying the same test as Michigan's for distinguishing between general and special damages have concluded that delay damages may be the kind that would naturally flow from the alleged injury, and therefore are general, not special, damages.

*See Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*, 215 Va. 796, 801–02 (1975). There, the court found that "ordinarily, delay in completion [of a construction project] requires an extension of the term of construction financing. The interest costs incurred and the interest revenue lost during such an extended term are *predictable results of the delay and are, therefore, compensable direct damages*." *Id.* at 802 (emphasis added); *see also Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*, 559 F. Supp. 3d 368, 393–94 (D. Del. 2021) (noting a split in authority but finding the same as did the Virginia Supreme Court: "A jury can reasonably find Petrucon must have foreseen Iron Branch would sustain extended financing costs because of its default and failure to complete the project in the specified time. The extending financing costs are *direct damages* flowing naturally from Petrucon's default.") (emphasis added).

For those reasons, summary judgment is **DENIED** on PA's argument that the contracts' prohibition on special damages precludes GEM from recovering any delay damages.

### ii.  "GEM Never Bargained for a Specific Schedule"

PA's second argument for why GEM should not be able to recover delay damages is that "[n]either the Contracts nor any agreement between the parties guaranteed a specific schedule or order of performance. Therefore, GEM's inability to perform its work on its desired schedule or timeframe does not amount to a breach of those Contracts." ECF No. 21, PageID.169. But as previously stated, the

contracts provided that PA would not dictate GEM's time or place of performance. ECF No. 1-3, PageID.25. There is a genuine dispute of material fact whether the delays for which GEM claims damages constituted breaches of PA's promises.

### iii. "GEM's Delay Theories Lack a Defensible Methodology"

Third, PA argues that GEM cannot recover damages because "GEM has not disclosed any expert witnesses. Nor has it disclosed any reliable methodology to calculate its alleged delay and inefficiency damages. For that reason alone, it cannot prove — and therefore, cannot recover — those damages." ECF No. 21, PageID.170. But as indicated above, pursuant to this Order, discovery will be reopened as to the computation of GEM's damages. This argument is therefore premature. If appropriate, PA may file a renewed motion for summary judgment on this narrow issue after discovery is completed.

### B. GEM Cannot Recover COVID, Travel, or Per-Diem Costs

PA argues that GEM cannot recover several types of damages, as their recovery is precluded by the contracts. ECF No. 21, PageID.171–72.

PA points to a category of damages which a witness for GEM testified included "*travel/per diems for those people working out of jurisdiction.*" *Id.* at PageID.171. But as PA points out, the MTSA provides that GEM will not be reimbursed for its travel expenses. ECF No. 1-3, PageID.24. PA is entitled to summary judgment on this issue, and GEM

cannot recover damages arising from GEM's "travel/per diems for those people working out of jurisdiction."

Similarly, PA argues that GEM cannot recover for "line items for 'Covid Exposure' on [the Mack project] and 'Covid Protocol' on [the Warren project]." ECF No. 21, PageID.172. PA points to the MTSA, which provides that GEM "and not PA" will "be solely responsible for ensuring compliance with all applicable labor and employment laws, [and] ordinances, codes, and regulations of government agencies." ECF No. 1-3, PageID.25. To the extent that those two line items record costs GEM incurred in complying with laws and regulations related to the COVID-19 pandemic, no reasonable jury could find that the MTSA allows GEM to recover such costs. GEM assumed the risk of such costs in signing the MTSA. Summary judgment therefore may be granted to PA on this category of damages.

Finally, PA argues that "to the extent that GEM bases its delay and inefficiency claims on COVID-related delays, these claims are also barred under the doctrine of impossibility." ECF No. 21, PageID.171. While that may be true, the Court cannot discern whether there are such damages yet, making summary judgment inappropriate on this point. This issue may be addressed during the period of reopened discovery.

## C.   "GEM's Calculations of Installed Items are Incorrect"

PA's third and final argument for why it should receive summary judgment on certain damages is that GEM's description of the additional

items it installed was incorrect. ECF No. 21, PageID.172–73. PA points to the testimony of a witness for GEM "that the scope of GEM's work did not change for either Project, except for "[a] couple changes that GEM was separately paid for." *Id.* at PageID.173. PA also produced a declaration by a witness stating that GEM's "device-count spreadsheet — the only specific explanation of any 'extra' installation work it was required to perform — is simply incorrect." *Id.* But GEM responds that according to *their* device counts, "the device counts increased since the inception of both Projects." ECF No. 23, PageID.432. GEM argues that it produced a spreadsheet making this clear. *Id.* (*citing* ECF No. 21-20, PageID.393–96). This is a factual dispute which is inappropriate for resolution at the summary judgment stage. Summary judgment is therefore denied.

## IV. CONCLUSION

GEM outlines nine categories of breach in its complaint that caused damages. For the reasons stated, the Court **GRANTS** summary judgment on claim (H) and its damages, as well as damages resulting from GEM's travel expenses and compliance with COVID-19 protocols. Summary judgment is **DENIED** as to the rest of GEM's claims. Moreover, the Court **ORDERS** that discovery on the calculation of GEM's damages is to be reopened. GEM is to bear the cost of PA's expenses involved in the reopened discovery, including taking

depositions, and the cost of PA's attorney's fees for reviewing the discovery gathered while discovery is reopened.

The period of re-opened discovery shall not exceed 60 days, and will close on November 18, 2025, and any motions relating to damages shall be filed within 14 days of the close of discovery, or by no later than December 2, 2025.

**SO ORDERED.**

Dated: September 19, 2025   /s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE